**CONSOLIDATION COAL COMPANY,**
Petitioner,

v.

**Robert D. WORRELL, Deceased; and Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.**

No. 93–3277.

United States Court of Appeals,
Sixth Circuit.

Argued and Submitted March 18, 1994.

Decided June 22, 1994.

**228**

William S. Mattingly (argued and briefed), Jackson & Kelly, Morgantown, WV, for petitioner.

Lawrence R. Chaban (briefed), J. Scott Leckie, Yablonski, Costello, Leckie & Chaban, Washington, PA, Christian P. Barber (argued and briefed), U.S. Dept. of Labor, Office of the Solicitor, Washington, DC, for respondents.

Before: KEITH and NELSON, Circuit Judges; and JOINER, Senior District Judge.*

PER CURIAM.

Consolidation Coal Company has petitioned for review of an order of the United States Department of Labor's Benefits Review Board affirming an award of benefits pursuant to the Black Lung Benefits Act, 30 U.S.C. §§ 901–945. Because we conclude that the administrative law judge who heard the claim applied the appropriate standards and based his decision to award benefits on substantial evidence, we shall deny the coal company's petition.

I

The claimant, Robert D. Worrell, had been a coal miner for at least 32 years when he retired in 1979 at the age of 63. He was last employed as a coal miner by the petitioner, Consolidation Coal Company.

Mr. Worrell filed a claim for benefits with the Office of Workers' Compensation Programs in June of 1979. The claim was denied the following October. Mr. Worrell filed a second claim on May 13, 1980, and the deputy commissioner issued a decision awarding benefits on March 4, 1982.

At Consolidation Coal's request the matter was referred to an administrative law judge. In July of 1988, following a hearing, the ALJ determined that Mr. Worrell was entitled to benefits. Applying the standards contained in 20 C.F.R. Part 718—the regulations applicable to claims filed after March 31, 1980—the ALJ found that Mr. Worrell suffered from a totally disabling respiratory or pulmonary impairment. Because Mr. Worrell had worked as a coal miner for at least 15 years and the evidence was thought to demonstrate the existence of a totally disabling respiratory or pulmonary impairment, the ALJ invoked a rebuttable presumption that Mr. Worrell was totally disabled due to pneumoconiosis. See 20 C.F.R. § 718.305(a). Finding that Consolidation Coal had failed to rebut the presumption, the ALJ ordered it to pay benefits.

On April 23, 1990—more than a year after Mr. Worrell's death from cancer of the esophagus—the Benefits Review Board vacated the ALJ's decision and remanded the case for reconsideration. The BRB determined that Mr. Worrell's most recent claim for benefits was actually a request for modification of the denial of his earlier claim. On the strength of that determination, the BRB held that the ALJ should have applied the standards contained in 20 C.F.R. Part 727, the regulations applicable to claims filed before April 1, 1980. The BRB then reviewed the ALJ's findings in light of *Knuckles v. Director, OWCP*, 869 F.2d 996, 999 (6th Cir. 1989), where we held that claims filed before March 31, 1980, but adjudicated after that date, should be evaluated under both Parts 727 and 718. The BRB held that the ALJ

---

* The Honorable Charles W. Joiner, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

had not properly considered contrary probative evidence of record, as required by § 718.204(c), before concluding that the presumption of total disability due to pneumoconiosis had been established. The BRB also found that the ALJ had not considered all the relevant evidence in determining whether Consolidation Coal had rebutted the presumption. The BRB vacated the award of benefits and remanded the case for adjudication under Part 727 and, if necessary, reconsideration under Part 718.

On remand the ALJ reopened the record and allowed Consolidation Coal to submit additional evidence. The final record now contains medical evidence extending from 1979 through the claimant's death in 1989, including x-rays, CT scans, six ventilatory studies, and four arterial blood gas studies; notes, records, and reports of several physicians who either saw Mr. Worrell or reviewed test results; and medical reports and depositions of Dr. Robert Altmeyer, a pulmonary specialist who examined Mr. Worrell in 1987, and Dr. Thomas Connelly, who examined Mr. Worrell in 1986. Dr. Altmeyer found no evidence of pneumoconiosis, but Dr. Connelly made a diagnosis of pneumoconiosis.

Considering the claim under Part 727, the ALJ found that the interim presumption of total disability due to pneumoconiosis was invoked by qualifying pulmonary function studies, § 727.203(a)(2), and by medical opinion evidence, § 727.203(a)(4). Accordingly, and because he concluded that Consolidation Coal had failed to rebut the presumption as required by 20 C.F.R. § 727.203(b), the ALJ awarded benefits. The BRB affirmed the award on January 26, 1993, and Consolidation Coal filed a timely petition for review.

## II

### A

■ Consolidation Coal argues that the ALJ and the BRB erred in treating Mr. Worrell's 1980 claim as a request for modification of his 1979 claim, rather than as a new claim. The question whether the claim should be analyzed under the standards of Part 727 turns on whether it was properly treated as a request for modification.

When a claimant files more than one application for benefits, as Mr. Worrell did, the applications are governed by 20 C.F.R. § 725.309(d). That section provides as follows:

"(d) In the case of a claimant who files more than one claim for benefits ... [i]f the earlier miner's claim has been finally denied, the later claim shall also be denied, on the grounds of the prior denial, unless the deputy commissioner determines that there has been a material change in conditions or the later claim is a request for modification and the requirements of § 725.310 are met."

Section 725.310 provides as follows:

"(a) Upon his or her own initiative, or upon the request of any party on grounds of a change in conditions or because of a mistake in a determination of fact, the deputy commissioner may, at any time before one year from the date of the last payment of benefits, or at any time before one year after the denial of a claim, reconsider the terms of an award or denial of benefits."

The Department of Labor routinely treats a claim for benefits filed within one year of denial of a previous claim as a request for modification, rather than as an independent duplicate claim, and this court has repeatedly approved the practice. See *Wilson v. Eastover Mining Co.*, No. 93-3096, 1993 WL 376488 at *2, 1993 U.S.App. LEXIS 24949 at *3 (6th Cir. Sept. 24, 1993) ("Because [the claimant's] second claim was filed within one year of the BRB's order affirming the denial of benefits, the ALJ and the Board properly construed the second claim as one for a request for modification pursuant to 20 C.F.R. § 725.310"); *Shugars v. Quarto Mining Co.*, No. 92–3253, 1992 WL 245912, 1992 U.S.App. LEXIS 25041 (6th Cir. Sept. 29, 1992); *Endicott v. Black Hawk Mining Co.*, No. 92–3438, 1992 WL 349300, 1992 U.S.App. LEXIS 32103 (6th Cir. Nov. 25, 1992).

The Director of the OWCP urges this court to reaffirm the Director's "long-standing policy" that "a new claim filed within the applicable period [*i.e.*, one year from a previ-

ous denial] is construed as a request for modification." The policy is set forth in *Coal Mine Procedure Manual,* U.S. Department of Labor, Chapter 2–1502, Paragraph 3, February 1980. The Director's interpretation of 20 C.F.R. § 725.310(a) is "deserving of substantial deference 'unless it is plainly erroneous or inconsistent with the regulation.'" *Mullins Coal Co. v. Director, OWCP,* 484 U.S. 135, 159, 108 S.Ct. 427, 440, 98 L.Ed.2d 450 (1987), quoting *Bowles v. Seminole Rock and Sand Co.,* 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945). Accord *Jessee v. Director, OWCP,* 5 F.3d 723 (4th Cir.1993).

Consolidation Coal asks us to take a narrower view of § 725.310. The company suggests that a new claim should be treated as a request for modification only if the claimant specifically states grounds for modification— as, for example, by identifying a mistake of fact or new evidence.

We believe that the coal company reads the deputy commissioner's authority too narrowly. The statute and regulations give the deputy commissioner authority simply to rethink a prior finding of fact at any time during the first year after a final order on the claim. Section 22 of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 922 (the statute underlying 20 C.F.R. § 725.310), "vest[s] a deputy commissioner with broad discretion to correct mistakes of fact, whether demonstrated by wholly new evidence, cumulative evidence, or merely further reflection on the evidence initially submitted." *O'Keeffe v. Aerojet–General Shipyards, Inc.,* 404 U.S. 254, 256, 92 S.Ct. 405, 407, 30 L.Ed.2d 424 (1971). If a claimant merely alleges that the ultimate fact (disability due to pneumoconiosis) was wrongly decided, the deputy commissioner may, if he chooses, accept this contention and modify the final order accordingly. "There is no need for a smoking-gun factual error, changed conditions, or startling new evidence." *Jessee,* 5 F.3d at 725.

■ The fact that Mr. Worrell did not specifically plead a mistake of fact or change in conditions in his second claim is irrelevant. Neither § 22 of the Longshore Act nor 20 C.F.R. § 725.310 requires a claimant to plead

such a ground. Once a request for modification is filed, no matter the grounds stated, if any, the deputy commissioner has the authority, if not the duty, to reconsider all the evidence for any mistake of fact or change in conditions. See *Eifler v. OWCP,* 926 F.2d 663, 667 (7th Cir.1991) (ALJ should have considered mistake as grounds for modification although petitioner did not plead mistake); *Jessee,* 5 F.3d at 724 ("even if [claimant] had not identified a glaring, specific error, the ALJ had the duty and full authority to review any and all prior findings of fact under the modification procedure"). We conclude that Mr. Worrell's second claim, filed within one year of the denial of his first one, was a request for modification.

B

■ The ALJ properly considered Mr. Worrell's claim under Part 727 of the regulations, which applies to claims filed before March 31, 1980. The regulations create a rebuttable presumption of total disability due to pneumoconiosis if the claimant has established at least 10 years of coal mining employment and has met any one of four medical criteria set out in the regulations. 20 C.F.R. § 727.203(a). The ALJ concluded that Mr. Worrell had at least ten years of coal mining employment and that two of the four medical criteria had been met: ventilatory studies established a chronic respiratory or pulmonary disease, § 727.203(a)(2), and other medical evidence established the presence of a totally disabling respiratory or pulmonary impairment, § 727.203(a)(4).

Consolidation Coal argues that the ALJ relied on flawed ventilatory studies and an "irrational" medical opinion and did not consider all the relevant evidence. Our task on review is limited to determining whether the ALJ's decision was supported by substantial evidence and was consistent with the applicable law. *Jordan v. Director, OWCP,* 892 F.2d 482, 486 (6th Cir.1989). When the question is whether the ALJ reached the correct result after weighing conflicting medical evidence, "our scope of review ... is exceedingly narrow. Absent an error of law, findings of facts and conclusions flowing therefrom must be affirmed if supported by

substantial evidence." *Riley v. National Mines Corp.*, 852 F.2d 197, 198 (6th Cir. 1988).

In reaching his conclusions, the ALJ relied on ventilatory studies conducted over a period of eight years. The ALJ found that five of the six ventilatory studies produced results satisfying the criteria set forth in § 727.203(a)(2) and that the results showed a progressive worsening of Mr. Worrell's respiratory function. The ALJ acknowledged that some of the evidence was in conflict, physicians who reviewed the paperwork having concluded that several of the ventilatory studies were not conducted properly. But the ALJ made a reasoned decision to give greater deference to the opinions of the physicians who actually administered the ventilatory studies, as opposed to those of physicians who merely reviewed the results. The ALJ relied most heavily on tests that administering physicians had concluded were conducted properly.

▪ Consolidation Coal contends that the ventilatory studies were flawed because the 1986 test showed variations between samples exceeding what is allowed in § 718, Appendix B. Appendix B states that the variation between the two highest FEV1 scores should not exceed 5 percent. The test conducted in 1986 showed a variation between the two highest scores of 6.8 percent. However, this variation does not preclude the ALJ from considering the test results. Section 718.-103(c) requires only that pulmonary function tests be conducted in "substantial compliance" with Appendix B. Moreover, the introduction to Appendix B permits the ALJ to consider even those test results that do not satisfy the quality standards. In this case the ALJ acknowledged that some of the studies did not fully comply with the quality standards in the regulations, and the results were weighed accordingly.

Although these test results alone satisfy the requirements of § 727.203(a) and create a rebuttable presumption of disability due to pneumoconiosis, the ALJ also found that other medical evidence raised the presumption of a totally disabling respiratory or pulmonary impairment. The ALJ gave greatest weight to the doctors who had performed the most recent examinations on Mr. Worrell—Dr. Altmeyer and Dr. Connelly. Dr. Altmeyer, a pulmonary specialist, concluded on the basis of a physical examination and a review of CT scans, x-rays and pulmonary function studies that Mr. Worrell did not have pneumoconiosis. In contrast, Dr. Connelly indicated that based on Mr. Worrell's history of coal mine employment, his complaints of breathing problems and productive cough, abnormal findings of physical examination, and the results of the pulmonary function studies, Mr. Worrell was totally and permanently disabled due to pneumoconiosis. Faced with this conflicting medical evidence, the ALJ found that "Dr. Connelly's conclusions are most persuasive." Although Dr. Altmeyer's testimony is also persuasive, the ALJ considered it, and his decision to assign more weight to Dr. Connelly is not impermissible, particularly in light of the results of the ventilatory studies. This court will defer to an ALJ's determination of credibility and resolution of inconsistencies in testimony, including the weight to be accorded to physicians' opinions, where, as here, the ALJ is supported by substantial evidence. *Riley v. National Mines Corp.*, 852 F.2d at 198.

The ALJ's conclusions that Mr. Worrell had established a presumption of total disability due to pneumoconiosis, and that Consolidation Coal had not rebutted that presumption, were supported by substantial evidence. Contrary to the petitioner's claims, the ventilatory studies established chronic pulmonary or respiratory disease, and Dr. Connelly's medical opinion is a reasoned one. The ALJ's findings are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

The petition for review is **DENIED.**